UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PAUL TALAMANTEZ,

          Petitioner,

                                  Case No. 1:24-cv-221

v.

                                  Honorable Robert J. Jonker

JEFF TANNER,

          Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Paul Talamantez is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of one count of carjacking, in violation of Mich. Comp. Laws § 750.529a. The trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to 10 to 30 years' imprisonment.

On March 4, 2024, Petitioner filed his habeas corpus petition raising the following ground for relief:

    I.      [Petitioner] was denied his 6th and 14th Amendment right[s] to effectiveness of counsel and due process where trial counsel advised him not to accept a plea offer [with a] sentence recommendation of 27 to 45 months as without [the] charge as a fourth habitual, and as a result [Petitioner] was tried, convicted, and sentenced as a fourth habitual thus receiving a sentence of 15–30 years.[1]

---

[1] The trial Court originally imposed a sentence of 15-30 years, but later reduced it to 10-30 years on a defense motion.

(Pet., ECF No. 1-1, PageID.22.) Respondent contends that Petitioner's ground for relief is meritless. (ECF No. 10.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.     Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> [Petitioner] was convicted of carjacking a van owned by Elmer Rodas De Leon, an undocumented immigrant who ran a painting business. Early in the morning, Rodas De Leon stepped out of his house to head to work. [Petitioner] came up behind him, pressed a weapon into his back, and demanded the key to his van. Rodas De Leon handed [Petitioner] the key and watched him drive away. [Petitioner] drove to the home of an acquaintance of Rodas De Leon to sell a paint sprayer from the van. Recognizing the van and paint sprayer, the acquaintance contacted Rodas De Leon. Rodas De Leon then called the police. [Petitioner] was apprehended at a nearby store.

*People v. Talamantez*, No. 359532, 2023 WL 4140808, at *1 (Mich. Ct. App. June 22, 2023).

On September 28, 2020, the trial court held a status conference "to see if there's some way this matter can be resolved without the need of a trial." (ECF No. 11-4, PageID.176.) The trial judge noted that his expectation was that "the prosecuting attorney convey to you, through your attorney, the best offer the Prosecutor's Office . . . believes [it is] in a position to make in order to resolve this matter." (*Id.*) The court noted that Petitioner was free to accept or reject the offer, but cautioned Petitioner that if he rejected the offer, the Prosecutor's Office would not be making any more plea offers. (*Id.*, PageID.176–177.)

The prosecutor then set forth the offer, which consisted of Petitioner pleading guilty to "carjacking as a supplemental two offender. The People would then agree to dismiss the supplemental four information." (*Id.*, PageID.177.) The prosecutor also noted that the State "would

agree not to pursue a charge of felony firearm, which is a mandatory two-year consecutive sentence, as well as agree not to pursue a mandatory 25-year minimum." (*Id.*) Defendant's counsel confirmed that was the offer as he understood it, and Petitioner confirmed he had discussed the offer with his attorney. (*Id.*)

The prosecutor noted that under the plea offer, Petitioner's guidelines would call for 81 to 168 months. (*Id.*) The trial court advised Petitioner that if he rejected the offer, he could face 25-year mandatory minimum, and that the State may pursue a felony-firearm charge, which would carry a mandatory 2-year consecutive sentence. (*Id.*, PageID.178.) The judge also advised Petitioner that he was not sure "how long it will take to get this trial up" because the court was only able to conduct "one to two trials a week given the Covid situation." (*Id.*, PageID.179.) Defendant's counsel then stated that he had not had a chance to "talk to the prosecutor about this" and noted that Petitioner had been in jail since September of 2019. (*Id.*) Ultimately, the trial court noted that it would entertain a bond motion if Petitioner's counsel wished to file one. (*Id.*, PageID.181.)

The parties appeared before the trial court for another status conference on February 23, 2021. (ECF No. 11-5.) At the outset, Petitioner's counsel noted that Petitioner "currently wishes to pass on the offer." (*Id.*, PageID.186.) Counsel noted that Petitioner had been incarcerated since September of 2019, and that March 1, 2021, would mark 18 months "that he has been incarcerated on this charge with no movement." (*Id.*) Petitioner's counsel asserted Petitioner's right to a speedy trial and indicated that he may be filing a motion to dismiss after March 1, 2021. (*Id.*) The court asked Petitioner if it was true that he wanted to reject the plea offer and have his case set for trial, and Petitioner responded that it was. (*Id.*, PageID.187.) Petitioner also acknowledged his understanding that "today would be the last day that any plea offers would be made and that your

3

case will simply be set for trial." (*Id.*) Petitioner reiterated that he wanted to reject the offer and proceed to trial. (*Id.*)

On March 19, 2021, the trial court held a hearing regarding Petitioner's motion to dismiss the charges "pursuant to an alleged violation of the right to a speedy trial." (ECF No. 11-6, PageID.192.) The court denied Petitioner's motion "because we're simply unable to do trials." (*Id.*, PageID.196.) The court, however, indicated its willingness to reduce Petitioner's bond, and reduced it from $100,000.00 cash or surety to $50,000.00 cash or surety. (*Id.*, PageID.198–199.)

Jury selection for Petitioner's trial occurred on September 13, 2021. (Trial Tr. I, ECF No. 11-8.) Over the course of the next three days, the Court heard testimony from numerous witnesses, including the victim. (Trial Tr. II, III, & IV, ECF Nos. 11-9, 11-10, and 11-11.) On the fourth day of trial, the prosecution moved to amend the information to include a lesser-included charge of unlawful driving away of an automobile (UDAA). (Trial Tr. IV, ECF No. 11-11, PageID.518.) The trial court concluded that instead of amending the information, it would instruct the jury on the lesser-included offense. (*Id.*, PageID.523–524.) On September 16, 2021, after about 2 ½ hours of deliberation, the jury returned a guilty verdict on both carjacking and UDAA. (Trial Tr. IV, ECF No. 11-11, PageID.589.) After the jury was excused, the prosecutor moved to vacate the verdict on UDAA and maintain the carjacking verdict. (*Id.*, PageID.591.) The trial court granted that motion. (*Id.*, PageID.592.)

Petitioner appeared before the trial court for sentencing on November 9, 2021. (ECF No. 11-12.) Although Petitioner's counsel did not have any additions or corrections to Petitioner's presentence investigation report (PSIR), Petitioner himself raised numerous objections. Petitioner also questioned why his guidelines did not reflect those mentioned when the prosecutor made various plea offers to him. (*Id.*, PageID.603.) Petitioner insisted that his "ending guidelines" called

4

for 27 to 47 months. (*Id.*, PageID.603–604.) The trial court responded that those would have been the guidelines if Petitioner had accepted the plea offer. (*Id.*, PageID.604.) Petitioner stated that he "did take the offer," but that his attorney was "incompetent." (*Id.*) Petitioner then questioned why his attorney was there, mentioning that he had fired his attorney "last week." (*Id.*, PageID.605.) Petitioner requested to represent himself. (*Id.*) Petitioner, however, then stated that he wanted "legal assistance, but [he did not want] Stovall." (*Id.*, PageID.609.) The trial court "allowed [Petitioner] to proceed without counsel, which really at this point would have just been making a statement and allocution." (*Id.*, PageID.611.) The trial court noted that because of Petitioner's three prior felonies, he was a fourth-offense habitual offender, and that his guidelines therefore called for 81 to 270 months. (*Id.*) The court sentenced Petitioner to 15 to 30 years of incarceration, with credit for 801 days of time served. (*Id.*)

On June 30, 2022, Petitioner, through appointed appellate counsel, filed a motion to correct invalid sentence in the trial court. (ECF No. 11-13, PageID.677–685.) Petitioner sought resentencing on two bases: (1) his right to allocute on his behalf was violated; and (2) he did not unequivocally request to represent himself and waive his right to counsel. (*Id.*, PageID.678.) Petitioner also requested that any court costs be waived because he was indigent. (*Id.*, PageID.683.) In an order entered on September 12, 2022, the trial court granted Petitioner's motion in part. (*Id.*, PageID.697.) Specifically, the trial court granted Petitioner's request for resentencing but denied his requests "to correct invalid sentence, vacate court costs, and issue an amended Judgment of Sentence and Order of Remit Prisoner funds." (*Id.*) The trial court conducted Petitioner's resentencing on November 14, 2022. (ECF No. 11-1, PageID.127.) Petitioner was resentenced to 10 to 30 years' incarceration, with credit for 1,171 days of time served. (*Id.*)

Petitioner appealed his conviction and sentence to the Michigan Court of Appeals. In a counseled brief, Petitioner argued that counsel was "ineffective for failing to move for a mistrial or, alternatively, failing to request that the trial court question the jurors about their ability to remain impartial after the victim testified at trial that [Petitioner] called him from jail." *Talamantez*, 2023 WL 4140808, at *1. On June 22, 2023, the court of appeals affirmed Petitioner's conviction and sentence. *Id.*

On June 26, 2023, the court of appeals received from Petitioner a motion for leave to file a late *pro per* supplemental brief, a proposed *pro per* supplemental brief, and a motion to remand, all raising the claim Petitioner now asserts in his § 2254 petition. (ECF No. 11-13, PageID.761–778.) However, those documents were returned to Petitioner that same day with a letter indicating that they were "not received in time to forward to the case call panel prior to issuing its June 22, 2023 opinion." (*Id.*, PageID.760.) The letter advised that Petitioner "may wish to discuss this matter with [his] attorney." (*Id.*)

On July 3, 2023, Petitioner filed a *pro se* motion for reconsideration and motion for remand, again raising the claim he now asserts in his § 2254 petition. (ECF No. 11-13, PageID.620.) Petitioner attached to his motion a letter, dated February 6, 2023, from the trial judge's law clerk. (*Id.*, PageID.628.) That letter indicated that the final plea offer, which Petitioner rejected on February 23, 2021, "was to plead guilty to Count 1 and the prosecutor would have dismissed the supplemental information charging you as a fourth habitual offender. Your sentencing guidelines would have been 27–45 months." (*Id.*) In an order entered on July 28, 2023, the court of appeals denied Petitioner's motion. (*Id.*, PageID.618.) Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, raising the claim he asserted in his motion for reconsideration. (ECF No. 11-14, PageID.784.) The Michigan Supreme Court denied leave to

6

appeal in an order entered on November 28, 2023. (*Id.*, PageID.779.) This § 2254 petition followed.

## II.     AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

7

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

8

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.    Discussion

Petitioner's sole ground for relief is that his Sixth Amendment right to effective counsel and his 14th Amendment right to due process were violated "where trial counsel advised him not to accept a plea offer [with a] sentence recommendation of 27 to 45 months as without [the] charge as a fourth habitual, and as a result [Petitioner] was tried, convicted, and sentenced as a fourth habitual thus receiving a sentence of 15–30 years." (Pet., ECF No. 1-1, PageID.22.) As an initial matter, the Court notes that Petitioner was subsequently resentenced to 10 to 30 years. Nevertheless, as discussed below, Petitioner fails to demonstrate entitlement to habeas relief.

A.     **The State Courts Addressed Plaintiff's Ground for Relief on the Merits**

As noted above, Petitioner first attempted to raise his ground for relief in a *pro per* supplemental brief submitted to the Michigan Court of Appeals. However, the court of appeals received that brief one day after issuing its opinion affirming Petitioner's conviction and sentence. Petitioner then raised it in a motion for reconsideration and motion for remand, as well as in his *pro per* application for leave to appeal to the Michigan Supreme Court. In an order entered on July 28, 2023, the Michigan Court of Appeals stated: "The motion for reconsideration is DENIED. The motion to remand is DENIED." (ECF No. 11-13, PageID.618.) On November 28, 2023, the Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal because it was "not persuaded that the question should be reviewed by this Court." (ECF No. 11-14, PageID.779.)

The orders issued by the court of appeals and the supreme court are entitled to AEDPA deference by this Court. *See Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020) (noting that the *Harrington* presumption of a merits adjudication "prevails even when the state court's opinion wholly omits discussion of the federal claim"). For the reasons discussed below, Petitioner fails to demonstrate that the state courts' rejection of his ground for relief is contrary to, or an unreasonable application of, clearly established federal law.

B.     **Ineffective Assistance/Due Process Violation Regarding Plea Proceedings**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

10

The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA" (citing *Harrington*, 562 U.S. at 102)).

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to

11

ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

In support of his argument, Petitioner relies upon the *pro per* application for leave to appeal that he submitted to the Michigan Supreme Court. In that application, Petitioner averred that in the plea offer, the prosecution "was willing to forgo the fourth habitual charge." (ECF No. 1-1, PageID.27.) Petitioner contends that he was "inclined to accept that plea deal but for trial counsel advising me not to accept the offer because he could get the case [thrown] out and/or quashed." (*Id.*) According to Petitioner "accepting the plea offer was unarguably a better course of action" because "the motion to dismiss or quash was doomed from the beginning." (*Id.*) Petitioner submitted an affidavit dated June 8, 2023, with his application. In that affidavit, Petitioner reiterated that he was inclined to accept the plea deal but for counsel's advice regarding a motion to dismiss, and that Petitioner "was left no choice but to proceed to trial" after the motion to dismiss was denied. (*Id.*, PageID.32.)

By denying Petitioner's motion for reconsideration and his *pro per* application for leave to appeal, the Michigan Court of Appeals and Michigan Supreme Court rejected the arguments Petitioner now reasserts in support of his § 2254 petition. Petitioner offers no evidence, much less clear and convincing evidence, to overcome the deference due to the state courts' orders. Petitioner offers only his self-serving statements that he would have accepted the plea offer. Those conclusory statements, however, are clearly belied by the record before the Court.

As noted *supra*, at the status conference held on September 28, 2020, the prosecutor set forth a plea offer that consisted of Petitioner pleading guilty to "carjacking as a supplemental two offender. The People would then agree to dismiss the supplemental four information." (ECF No. 11-4, PageID.177.) The State would also not pursue a felony-firearm charge and a mandatory 25-year minimum. (*Id.*) Petitioner confirmed he had discussed the offer with his attorney. (*Id.*) The prosecutor noted that under the offer, Petitioner's guidelines would call for 81 to 168 months. (*Id.*) Ultimately, the status conference concluded without a definitive assertion by Petitioner whether he wished to accept or reject the offer.

The parties appeared before the trial court for another status conference on February 23, 2021. (ECF No. 11-5.) According to a February 6, 2023, letter from the trial court, at the time of that status conference, the final plea offer called for Petitioner to "plead guilty to Count 1 and the prosecutor would have dismissed the supplemental information charging you as a fourth habitual offender. Your sentencing guidelines would have been 27–45 months." (ECF No. 11-13, PageID.628.) However, at the outset at that status conference, Petitioner's counsel explicitly stated that Petitioner "currently wishes to pass on the offer." (ECF No. 11-5, PageID.186.) The court asked Petitioner if it was true that he wanted to reject the plea offer and have his case set for trial, and Petitioner responded that it was. (*Id.*, PageID.187.) Petitioner also acknowledged his

13

understanding that "today would be the last day that any plea offers would be made and that your case will simply be set for trial." (*Id.*) Petitioner reiterated that he wanted to reject the offer and proceed to trial. (*Id.*)

At trial, Petitioner's defense theory was that the victim was "telling a lie." (Trial Tr. II, ECF No. 11-9, PageID.350.) During opening statements, Petitioner's counsel admitted that Petitioner had taken the victim's car. (*Id.*) Counsel, however, stated that when Petitioner did so, the victim was not there. (*Id.*) Essentially, Petitioner admitted that his only offense was UDAA and that he never committed a carjacking.

Granted, at sentencing, Petitioner questioned whether the trial court would be applying the 27–47 months called for by the guidelines under the "ending plea deal." (ECF No. 11-12, PageID.604.) The court, however, reminded Petitioner that by going to trial, he did not have the benefit of "the plea deal or the guidelines scored." (*Id.*, PageID.604.) Petitioner then said that he did take the offer, but that his attorney was incompetent. (*Id.*) Petitioner then went on to maintain his innocence, stating, "I'm not going to go down like this. I didn't carjack nobody. I took it without his permission. He wasn't present, but whatever." (*Id.*, PageID.610.)

At no time prior to sentencing did Petitioner speak up and refute counsel's statements that Petitioner wished to reject the plea offers. Instead, at the February 23, 2021, status conference, Petitioner stated multiple times that he wished to reject the offer and proceed to trial. Moreover, even if counsel made a strategic decision to file a motion to dismiss based upon a speedy trial violation, that does not automatically equate to ineffective assistance regarding the plea offer. "[T]actical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).

The record is devoid of any evidence suggesting that Petitioner reconsidered his decision to reject the plea offer between the February 23, 2021, status conference and when trial began. Indeed, the trial court's docket reflects that a final status conference held on September 8, 2021, no plea was taken, and the matter was set for trial. (ECF No. 11-1, PageID.132.) Petitioner's statements at sentencing demonstrate Petitioner's apparent regret in not taking the plea offer when it was offered. Hindsight, however, is 20/20, and Petitioner's conclusory, self-serving statements, without any supporting evidence, cannot afford him relief.

In short, Petitioner has failed to show that the state courts' rejection of his ineffective assistance/due process claim premised upon counsel's alleged ineffectiveness regarding the plea offer is contrary to, or an unreasonable application of, *Strickland*, *Hill*, or *Lafler*. Petitioner, therefore, is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude

15

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claim was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.

Dated:   October 25, 2024                         /s/ Robert J. Jonker
                                                  Robert J. Jonker
                                                  United States District Judge